**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**AT COVINGTON**

**CIVIL ACTION NO. 04-55-DLB**

**USED-CAR-PARTS.COM, INC.** **PLAINTIFF**

**vs.** **OPINION & ORDER**

**HOWARD NUSBAUM** **DEFENDANT**

*********************

Plaintiff ("Car-Part") brought this declaratory judgment action seeking a determination that it has not infringed upon certain copyrights possessed by Defendant. Presently before the Court is Defendant's motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer to the District of Connecticut. (Doc. #8). Plaintiff filed a response (Doc. #11), to which Defendant replied. (Doc. # 14). For the reasons that follow, the Court concludes that it does not have personal jurisdiction over Defendant and, accordingly, transfers this case in its entirety to the United States District Court for the District of Connecticut, pursuant to 28 U.S.C. § 1406(a). Defendant's motion will, therefore, be **GRANTED in part** and **DENIED in part**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

As its name implies, Plaintiff (a Kentucky corporation) is a repository for information related to used automobile parts. Plaintiff is engaged in the business of helping "recyclers" (i.e., salvage yards) manage and market their inventories to the general public and other

recyclers.[1] As part of its operations, Plaintiff uses computer software (Checkmate), as well as add-on products (Advanced Management Reports), that were developed by Defendant (a resident of Connecticut) with his former employer, AutoInfo, Inc. Defendant currently claims to be the sole owner of all rights, title, and interest therein.

This copyright dispute is the latest in a series of litigation involving the Advanced Management Reports (AMRs). Automatic Data Processing (ADP) was the first to acquire rights in the AMRs in 1995. ADP subsequently licensed the right to use and distribute the AMRs to Cooperative Computing, Inc. (CCI) as part of an asset purchase in 1997. That transaction prompted cross suits between Defendant and ADP in the District of Connecticut. Those suits were amicably resolved in January 2000. In 2002, CCI attempted to sub-license the right to use and distribute the AMRs to Plaintiff. Defendant again filed suit - this time against CCI - in the District of Connecticut, seeking to enjoin the sale. ADP intervened, seeking a reformation of its prior settlement with Defendant. Those actions were withdrawn following the execution of a settlement agreement between Defendant, CCI, and ADP, in which the CCI-Used-Car-Part transfer was allowed to proceed. However, following the CCI-Used-Car-Part transaction, Defendant repeatedly threatened to bring suit against Plaintiff for copyright infringement. (Doc. #1, Exhibit C). In the face of such threats, Plaintiff filed the instant action seeking a judgment that its use and/or distribution of Defendant's copyrighted products is non-infringing.

[1]According to its website, Plaintiff creates websites for recyclers to their inventories online, and even allows them to make their parts available via its own website (www.car-part.com) to other recyclers and the general public.

Plaintiff filed suit under federal copyright law and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, on March 23, 2004. (Doc. #1). Defendant filed a motion to dismiss for lack of personal jurisdiction on August 25, 2004.[2] (Doc. #8). Plaintiff filed a response (Doc. # 11), to which Defendant replied. (Doc. #14). Plaintiff also filed a separate motion for expedited discovery limited to the issue of personal jurisdiction. (Doc. #10).

The Court heard oral argument on all pending motions on December 10, 2004. In an order dated that same day, the Court granted both parties leave to conduct expedited discovery limited to the issue of personal jurisdiction, and held Defendant's motion to dismiss in abeyance. (Doc. #22). Discovery was scheduled to close on March 11, 2005, but the Court approved an agreed order extending the deadline to March 30. The parties timely filed supplemental briefs (Docs. #26, 27) and responses (Docs. #28, 29).

## II. ANALYSIS

### A. Legal Standard

When presented with a Civil Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, a court has three procedural alternatives: 1) it may determine the motion on the basis of affidavits alone; 2) it may permit discovery in aid of the motion; or 3) it may conduct an evidentiary hearing on the merits of the motion. *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). Regardless of which alternative the court pursues, the plaintiff always bears the burden of establishing that jurisdiction exists. *Id*. The weight of that burden, however, depends on whether the court chooses to rule on

---

[2]Prior to filing his motion, Defendant also filed a complaint against Plaintiff in the District of Connecticut, alleging copyright infringement and violation of the Connecticut Unfair Trade Practices Act (CUTPA), and seeking a declaratory judgment. That suit was filed one day before the pending motion, on August 24, 2004.

written submissions alone or to hear evidence on the personal jurisdiction issue (either pretrial or during trial). *Id*. Where, as here, the Court has heard oral arguments and afforded the parties a limited amount of time within which to conduct discovery, Plaintiff must prove that personal jurisdiction over Defendant exists by a preponderance of the evidence. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998).

Where a federal court's subject matter jurisdiction over a case arises from the existence of a federal question, personal jurisdiction over a defendant exists if: 1) the defendant is amenable to service of process under the forum state's long-arm statute, and 2) the exercise of personal jurisdiction would not deny the defendant due process. *See Bridgeport Music, Inc. v. Still N the Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003) *quoting Bird v. Parsons,* 289 F.3d 865, 871 (6th Cir.2002) (citation omitted). Kentucky's long-arm statute provides that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's ... [t]ransacting any business in this Commonwealth." K.R.S. § 454.210(2)(a)(1). This provision permits Kentucky courts to exercise jurisdiction to the fullest extent permitted by due process. *See Info-Med, Inc. v. Nat'l Healthcare, Inc.*, 669 F. Supp. 793, 795-96 (W.D. Ky. 1987). Accordingly, this Court will merge the question of how far Kentucky intended its long-arm jurisdiction to reach into the question of whether exercising jurisdiction in this case would comport with the requirements of due process. *See Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.,* 91 F.3d 790, 793 (6th Cir.1996); *First Nat'l Bank of Louisville v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1125 (6th Cir.1982).

In order to subject a nonresident defendant to personal jurisdiction without violating due process, the defendant must have "minimum contacts" with the forum "such that

maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation omitted). The familiar three-part test followed in the Sixth Circuit for determining whether a nonresident defendant has the requisite minimum contacts requires:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir.1968) (footnote omitted).

The question of whether a defendant has purposefully availed himself of the privilege of doing business in the forum state is "the sine qua non for in personam jurisdiction." *Id*. at 381-82. The "purposeful availment" requirement is satisfied when the defendant's contacts with the forum state "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State," and when the defendant's conduct and connection with the forum are such that he "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). This jurisdictional inquiry is not a "mechanical test," and a court must "consider the jurisdictional facts of each case individually [in order] to make judgments as to the substantiality of contacts with the forum state and the fairness and justice of subjecting a specific defendant to the in personam jurisdiction of the forum state." *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 225-26 (6th Cir.1972).

Several decisions from the Sixth Circuit further define the scope and limitations of the minimum contacts test originally articulated in *International Shoe.* For example, in *Compuserve, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996), a computer network service brought a declaratory judgment action against one of its subscribers who alleged that the service had infringed on his trademarks. The subscriber, located in Texas, had previously entered into an agreement with Compuserve, Inc. whereby various software programs which he had developed were marketed through the computer service. In essence, Compuserve served as his marketing source with regard to the various computer programs. The contract entered into between Patterson and Compuserve, Inc. also expressly provided that the agreement was entered into in Ohio and would be governed and construed in accordance with Ohio law.

Faced with these facts, the Sixth Circuit found that Patterson had purposely contracted to market a product with the Ohio-based Compuserve essentially operating as his distribution center. The court concluded that Patterson was subject to suit in Ohio, but was careful to emphasize that merely entering into a contract with Compuserve did not, without more, establish the minimum contacts necessary to sustain personal jurisdiction. *Id.* at 1265.

That limitation informed the court's subsequent decision in *Kerry Steel, Inc. v. Paragon Indus., Inc.,* 106 F.3d 147 (6th Cir.1997). In that case, the plaintiff (a Michigan steel service center) telephoned an Oklahoma pipe fabricator, and offered to sell it steel coils. The defendant accepted the offer by telephone and, following negotiations, engaged in additional telephone calls and fax communications. After a dispute arose, the plaintiff brought suit in Michigan claiming money was due and owing. The Sixth Circuit concluded

that the defendant had not purposefully availed itself of the benefits and protections of Michigan's law, *id.* at 151, and borrowed the following language from its decision in *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1301 (6th Cir. 1989):

> The telephone calls and letters on which the plaintiff's claim of jurisdiction primarily depends strike us as precisely the sort of "random," "fortuitous," and "attenuated" contacts that the *Burger King* Court rejected as a basis for haling non-resident defendants into foreign jurisdictions.

*Kerry Steel*, 106 F.3d at 151. With these considerations in mind, the Court now turns to the dispositive issue, that is, whether it has specific in personam jurisdiction over Defendant.[3]

## B. Discussion

### 1. *Southern Machine* test

In support of his motion to dismiss, Defendant asserts that his contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Moreover, Defendant maintains that "every transaction and conversation between [him] and Car-Part is subject to an agreement that purposely and intentionally excluded such conversations and transactions from any consideration by this Court."[4] Plaintiff, by contrast, argues that discovery has shed light on the extent of Defendant's contacts with the Commonwealth, sufficient to permit this Court to exercise jurisdiction over him. In particular, Plaintiff alleges Defendant: 1) repeatedly requested the source-code from Plaintiff in order to ensure that the add-on products were operating properly, and these requests were made on his own

---

[3]Plaintiff argues that general, as well as specific, jurisdiction exists over Defendant. However, the Court concludes that the record fails to indicate that Defendant engaged in the type of "continuous and systematic" contacts in the Commonwealth of Kentucky sufficient to find general jurisdiction. *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952).

[4]The parties refer to this agreement as the "408 Agreement" and, to the extent it will subsequently be discussed herein, the Court will do the same.

behalf; 2) engaged in "elaborate conversations" with Plaintiff regarding the latter's acquisition and use of the AMRs; 3) negotiated several different business arrangements in Kentucky; 4) drafted a tentative agreement between himself and Plaintiff in an effort to obtain rights to property located in Kentucky; and 5) consented to the CCI-Car-Part transfer, and delegated to Car-Part the duties of collecting and forwarding the use fees (i.e., royalties) owed to him.[5] By doing so, Plaintiff alleges that Defendant purposely availed himself of the benefits and protections of the laws of this state.

Plaintiff and Defendant first began negotiating a possible licensing agreement covering the AMRs in April 2003. Preliminary discussions transpired on two occasions - April 26, 2003 and June 3, 2003. On June 3rd, Defendant e-mailed a draft agreement to Plaintiff's President, Jeff Schroder. Though the precise terms of that agreement are unknown, Defendant alleges that, in it, he proposed two different, yet equally reasonable, "business arrangements." (Plaintiff's depo, Doc. #27, Exhibit 33, p.146). Negotiations, which were conducted primarily via electronic mail and facsimile, continued through June

[5] Plaintiff also claims that Defendant requested its assistance in collecting back-fees owed to him by CCI.

2003,[6] but never materialized.[7] Even after the Nusbaum-CCI settlement was executed on September 30, 2003, the parties in this case continued to negotiate to no avail.[8]

Plaintiff claims that by "soliciting" a licensing agreement with it, a Kentucky corporation, Defendant purposely availed himself of the benefits and protections of laws of this state. The Court does not agree. First, the relevant communications occurred via letters and/or electronic mail. *See Kerry Steel*, 106 F.3d 147 (explaining that telephone calls and e-mails are insufficient to create in personam jurisdiction). Second, and more importantly, the parties' efforts failed to bear fruit. To date, Plaintiff and Defendant have not reached a licensing or purchasing agreement governing Plaintiff's use and/or distribution of the add-on products. This fact is critical in light of Sixth Circuit and Supreme

---

[6]Between April and July 2003, the parties apparently exchanged drafts of a licensing agreement. Plaintiff makes much of the fact that its version included a choice of law and forum selection clause, providing that any disputes would be governed by the laws of Kentucky and litigated in this district. (Doc. #27, p. 5). The Court notes, however, that to date no contract, much less the contract proposed by Plaintiff, has been adopted.

[7]It is undisputed that a "business arrangement" between Plaintiff and Defendant was of paramount importance to both parties. In fact, it was an express condition precedent to the Nusbaum-CCI settlement. The terms of the Nusbaum-CCI settlement stated that it was "expressly conditioned upon an agreement between Nusbaum and Car-Part with respect to Car-Part's use of the Nusbaum products...in the future." Defendant, however, waived that condition and executed the settlement without finalizing an agreement with Plaintiff. Hence, the parties are now before the Court.

[8]Prior to the CCI-Car-Part transaction, Defendant's attorney, Vlad Spitzer, repeatedly warned of "more litigation between Howard and Car-Part" absent a mutually agreeable arrangement. (letter dated September 10, 2003; e-mail dated September 15, 2003). Defendant also e-mailed Jeff Schroder directly on January 29, 2004 about continued negotiations. In that same e-mail, Defendant requested Plaintiff's assistance in recouping back royalties owed to him from CCI. Around the same time, Defendant contacted Plaintiff to request the AMRs source code, which Defendant alleges is required for the program to operate properly. The Court concludes that these communications - relating to back royalties and the source code - were merely an attempt by Defendant to protect his interest in the AMRs. While the Court would expect nothing less of a copyright owner, it cannot say for purposes of this motion that Defendant could expect to be hailed into a Kentucky court based upon these discussions with Plaintiff.

Court precedent holding that, even where the parties have a contract, personal jurisdiction is not automatic. *Compuserve*, 89 F.3d at 1265; *Burger King*, 471 U.S. at 478. Finally, at least one court has concluded that contacts aimed at preventing future infringement and executing a licensing agreement are insufficient to establish personal jurisdiction. *See Lawman Armor Corp. v. Simon*, 319 F. Supp. 2d 499 (E.D. Pa. 2004). Here, the "real object" of the parties' discussions was to avoid a future copyright dispute, like the one they currently find themselves embroiled in.

Plaintiff also maintains that Defendant knowingly distributes his products through a local company, which is sufficient to establish the requisite minimum contacts. In particular, Plaintiff claims that when Defendant abandoned his attempt to enjoin the CCI-Car-Part asset purchase, he was keenly aware that a Kentucky-based corporation would acquire the add-on products. By consenting to the transaction, Defendant also: 1) agreed that payment for the use of the add-on products would be made directly to him by Plaintiff, and 2) reserved his rights to proceed against Plaintiff. Although the parties may have anticipated an ongoing, and perhaps acrimonious, relationship at the time the Connecticut settlement was executed, Defendant's decision to forego his attempt to enjoin the CCI-Car-Part transfer is not tantamount to purposefully availing himself of either the privilege of acting or causing consequence in Kentucky. Personal jurisdiction on that basis, too, must fail.

In sum, the Court concludes that: 1) Plaintiff cannot unilaterally create personal jurisdiction over Defendant by using his copyrighted products in Kentucky without an agreement; 2) by abandoning his attempt to enjoin the CCI-Car-Part asset purchase, Defendant did not purposefully avail himself to the privilege of acting in this forum; and 3) Defendant's receipt of payments from Plaintiff for the use of his products, and request for

assistance in recouping back royalties owed by CCI, is not sufficient to confer in personam jurisdiction over him. For all these reasons, the Court determines that Plaintiff has failed to: 1) satisfy the first *Southern Machine* prong, and 2) sustain its burden of proving by a preponderance of the evidence that personal jurisdiction over Defendant exists.[9]

**2. 408 Agreement**

In support of his motion, Defendant also asserts that his already limited contacts with the Commonwealth of Kentucky are rendered even more so under the one agreement the parties were able to reach - the 408 Agreement. As detailed more fully above, while prior litigation involving Defendant and CCI was pending in the District of Connecticut,[10] Plaintiff and Defendant were negotiating a licensing agreement covering the add-on products. As part of their discussions, Plaintiff and Defendant agreed that:

> [E]verything done, written, or said by either party as part of the Discussions shall be subject to Federal Rule of Evidence 408 and corresponding State and Common Law principles, *and additionally [the parties] agree that [the] same will not be used in any proceeding by, between, or relating to Car-Part and Nusbaum to prove or refute any position of any party in a proceeding.*

(Doc. #26, Exhibit A) (emphasis added). According to Defendant, the discussions referred to in the 408 Agreement and relied upon by Plaintiff to establish that personal jurisdiction does, indeed, exist are precluded from the Court's consideration.

---

[9]For the sake of completeness, the Court notes that even if some of Defendant's Kentucky-based contacts (i.e., warning of potential litigation and negotiating a licensing agreement) gave rise to the instant action for declaratory judgment, *see Compuserve*, 89 F.3d at 1267, the exercise of jurisdiction over Defendant would be unreasonable in light of the following factors: 1) the burden on Defendant, 2) the interest of the forum state, 3) Plaintiff's interest in obtaining relief, and 4) the interest of other states in the efficient resolution of this dispute. *Id*. at 1268.

[10]This litigation related to an asset purchase transaction involving CCI and Car-Part.

Plaintiff points out in opposition that at least one court has considered and rejected this argument. In *Quixtar Inv., Inc. v. Seifert*, No. 99-614, 2000 U.S. Dist. Lexis 379 at *15 (W.D. Mich. Jan. 13, 2000), the defendant moved to dismiss the plaintiff's unfair competition and fraud claims based on lack of personal jurisdiction. Before the plaintiff filed suit, the parties corresponded informally, and the defendant agreed to transfer all rights in the subject trademark to the plaintiff in exchange for $2.5 million. *Id*. at *7. In support of his motion to dismiss, the defendant argued that under Federal Rule of Evidence 408, the court should not consider his offer to settle in determining whether personal jurisdiction existed. *Id*. The court rejected his argument, noting that the monetary demand was not being submitted to "prove liability for or invalidity of the claim or its amount," but rather to support the exercise of personal jurisdiction. *Id*. The court concluded that the evidence could properly be considered for that purpose. *Id*.

According to Plaintiff, this Court should also reject Defendant's argument that any discussions related to a licensing agreement cannot be considered as part of the personal jurisdiction analysis under the terms of the 408 Agreement. *Quixtar*, however, is clearly distinguishable from the instant case in that it involved an informal offer to settle, as opposed to a valid, enforceable contract. The parties themselves have represented, and the Court has no reason to doubt, that the 408 Agreement and the provisions therein were a bargained-for exchange. The Court concludes that the broadly-worded agreement, which in essence removes the contacts related to a licensing agreement from the equation, furnishes an alternative basis for the Court's holding that personal jurisdiction over Defendant is lacking.

**3. Transfer**

One final matter deserves comment. In conjunction with his motion to dismiss, Defendant requested that this action be transferred to the District of Connecticut, where a case involving the same parties is pending. Defendant moved for transfer pursuant to 28 U.S.C. § 1404(a). However, transfer under that section may not be granted when the district court does not have personal jurisdiction over the defendant. *See Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir. 1980); *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993).

By contrast, section 1406(a), which permits transfer where venue is improper and the interest of justice would be served, does not require that the district court first have personal jurisdiction over the defendant. 28 U.S.C. § 1406(a). The Court concludes that venue in this district is improper in that: 1) Defendant does not reside in Kentucky, 2) the claims at issue do not arise in Kentucky, and 3) Defendant is not subject to personal jurisdiction here. 28 U.S.C. § 1391(a). Accordingly, the Court finds in the interest of justice that this case should be transferred in its entirety to the United States District Court for the District of Connecticut.

## III. CONCLUSION

In accordance with the above,

**IT IS ORDERED** that:

(1) Defendant's motion to dismiss for lack of personal jurisdiction (Doc. #8) be, and hereby is, **GRANTED**;

(2) This case is transferred in its entirety to the United States District Court for the District of Connecticut pursuant to 28 U.S.C. § 1406(a);

(3) Defendant's motion to transfer pursuant to 28 U.S.C. § 1404(a) is **DENIED AS MOOT**; and

(4) This case is stricken from the active docket of this Court.

This 25th day of August, 2005.




G:\DATA\Opinions\2-04-55-MTD.wpd